Grafton
No. 6850

STATE OF NEW HAMPSHIRE v. RICHARD W. COMEAU

June 28, 1974

*Warren B. Rudman,* attorney general, and *Thomas D. Rath,* assistant attorney general (*Mr. Rath* orally), for the State.

*Stebbins & Bradley* and *Daniel J. Connolly (Mr. Connolly* orally) for the defendant.

KENISON, C.J. The primary issue in this case is whether a police officer's affidavit on which a search warrant was issued contained sufficient facts to establish the constitutional requirement of probable cause. A further issue is whether the State met its burden of proof that the defendant had custody of certain marijuana plants in violation of RSA 318-B:26 I (b) (2) (Supp. 1972) (Laws 1969, 421:1). A criminal complaint was filed against the defendant alleging that he had possession of a controlled drug on August 27, 1973 in Plymouth, New Hampshire. Upon arraignment the defendant entered a plea of not guilty and waived a trial by jury. At a subsequent arraignment, the defendant entered a plea of guilty in exchange for a recommendation by the prosecutor as to a sentence. The Court (*Perkins,* J.), however, indicated to the defendant that it would not follow the recommendation and permitted him to withdraw his plea of guilty. In advance of trial, the defendant filed a motion to suppress evidence seized by the police pursuant to a search warrant. After a hearing the court denied the motion subject to the defendant's exception. A jury-waived trial was held, and the defendant was found guilty. The defendant's exception to the denial of his motion to suppress and all other exceptions arising during the course of the trial were reserved and transferred.

The record reveals that the defendant lived on 7 Warren Street in Plymouth, New Hampshire in a building which contained several apartments — two above the street level and one below. The former were leased respectively to the defendant's mother and his brother. The latter was leased to the defendant's girlfriend Ellen Murdough. There was evidence that the defendant spent time in the apartments of both his mother and Miss Murdough. The marijuana plants were discovered by the police pursuant to a search warrant in a room adjacent to the rear of Miss Murdough's apartment on the lower level. This room could not be entered directly from her apartment. Rather, access could only be obtained either from a padlocked door leading into the room from

a common hallway which opened on Miss Murdough's apartment and on Mrs. Comeau's apartment (through the means of a stairway) or from a door leading into the room from a shed in the rear of the building.

The affidavit on which the search warrant was issued contained information offered to the Plymouth police chief on August 27, 1973 by an undisclosed informant and stated "I have information based on a reliable informant, who has in the past given information which led to the arrest and conviction of five persons for burgulary (sic) within the past two years, who has seen thirteen (13) or fourteen (14) marijuana plants about 8 ft. tall hanging to dry in the apartment of Richard Comeau located at 7 Warren St., Plymouth, N.H. This apartment is below street level and has a set of stairs leading from the street down to the outside porch. The apartment consists of a bath, a bedroom, a living room, kitchen and another room which is off hallway which [le]ads from the kitchen." The police chief presented this affidavit to *Murphy*, J., and provided additional oral testimony.

As a preliminary matter, the defendant contends the affidavit was constitutionally defective because although it specified the informer's success in providing information relative to burglaries, it failed to establish his reliability in reference to drug offenses. We know of no constitutional mandate requiring an informer to be a specialist in reporting specific types of crime. An informer's reliability depends primarily on his proven ability to report facts in an accurate and timely fashion.

The defendant's primary argument is that the affidavit contained insufficient facts to support the informant's conclusion that the plants in the adjacent room at 7 Warren Street were marijuana plants. He points out that the affidavit merely states that the informant saw "thirteen (13) or fourteen (14) marijuana plants about 8 ft. tall hanging to dry in the apartment." He also draws attention to the cross-examination of the police chief in which it was revealed that he had not pressed the informant for a more detailed description of the plants. The defendant claims that the police chief's failure to discover or specify the underlying facts prevented the magistrate from making an independent judgment as to the

existence of probable cause and thus violates N.H. CONST. pt. I, art. 19 and the standards set forth in *Aguilar v. Texas,* 378 U.S. 108 (1964), and *Spinelli v. United States,* 393 U.S. 410 (1969).

We are not persuaded by this argument. The alleged marijuana plants were described by the informer as being eight feet tall and hanging to dry. It is common knowledge to persons involved with the prevention of drug abuse that a mature marijuana plant will grow to this height and that the drying of the marijuana plant is a necessary step in the production of certain cannabis-type drugs. RSA 318-B:1 IV (Supp. 1973). The magistrate could have properly decided from this evidence that there was a substantial likelihood that marijuana plants were being kept in the building at 7 Warren Street. *United States v. Harris,* 403 U.S. 573, 577-80 (1971); *State v. Nickerson,* 114 N.H. 47, 50, 314 A.2d 648, 650 (1974); *State v. Moreau,* 113 N.H. 303, 307, 306 A.2d 764, 766 (1973); *see Jones v. United States,* 362 U.S. 257, 270 (1960). The defendant suggests that the alleged marijuana plants could have been corn or sunflower plants, which commonly grow to eight feet in height, and urges that the possibility of misidentification vitiates the probable cause. An application for a search warrant is not required to contain facts sufficient to prove beyond a reasonable doubt that contraband will be found in a particular location. It is enough to establish a strong probability that the facts alleged are true. *United States v. Ventresca,* 380 U.S. 102, 107-09 (1965); 2 H. Underhill, Criminal Evidence § 411 (5th ed. 1956, Supp. 1969).

The defendant's final contention is that the State failed to prove all the necessary elements for a violation of RSA 318-B:26 I (b) (2) (Supp. 1972) (Laws 1969, 421:1). This statute requires that the State prove beyond a reasonable doubt (1) that the defendant had knowledge of the nature of the drug, (2) that he had knowledge of its presence in his vicinity and (3) that he had custody of the drug and exercised dominion and control over it. *State v. Colcord,* 109 N.H. 231, 233, 248 A.2d 80, 82 (1968). The defendant concedes that the State sustained its burden on the first two elements, but argues that it failed to prove beyond a reasonable doubt that he had custody of the marijuana plants.

The State introduced the following evidence to prove that the defendant had custody of the marijuana plants. First, Miss Murdough admitted that the defendant was a frequent visitor, had spent various nights in her apartment and was permitted to use the apartment in her absence. Although there was only one key to the apartment, Miss Murdough stated that the defendant was able to enter through the bathroom window. The police chief testified that he personally had observed the defendant going in and out of the apartment "at least fifty times" in the eight months previous to the search and had been informed by a person who collected the rent at 7 Warren Street about two months prior to the search that it was occupied by the defendant and Miss Murdough. *See State v. Nickerson,* 114 N.H. 47, 52, 314 A.2d 648, 651 (1974). He also testified that he had served a capias on the defendant on March 8, 1973 at Miss Murdough's apartment and found him unclothed in bed in the bedroom. Second, the defendant admitted that he owned a tape recorder, two car batteries and several other items which where found in the apartment at the time of the search. There were also several articles of men's clothing in the apartment, although their actual ownership was never established. Third, the defendant was aware of the presence of the marijuana because he was in the apartment on the night of August 21 or 22, 1973 when Wayne Chimileski arrived with the plants and stored them in the adjacent room. Fourth, Miss Murdough testified that both she and the defendant stored personal belongings in the adjacent room. Although this room was padlocked, the key to the lock was on a key chain which belonged to Miss Murdough. This key chain also contained a key to her apartment and to her automobile. There was evidence that the defendant borrowed the key chain to operate her car while the marijuana was in the building. Fifth, when the police executed the search warrant, the defendant was found in Miss Murdough's apartment.

We believe that the evidence and all reasonable inferences could be found to prove beyond a reasonable doubt that the defendant had custody of the marijuana plants. *State v. Cote,* 113 N.H. 647, 650, 312 A.2d 687, 689 (1973); *State v. Casey,* 113 N.H. 19, 300 A.2d 325, 326 (1973). He was

a frequent visitor in Miss Murdough's apartment and was aware of the presence of the plants in the adjacent room. Although the key to the room was not available to him on all occasions, it is plain that his relationship with Miss. Murdough was such that it could be found that he entered the room and exercised dominion and control over the plants when she was in the apartment. Katz, *Possession of Narcotic Drugs under State and Federal Statutes,* 25 U. Miami L. Rev. 306, 312 (1971); Whitebread & Stevens, *Constructive Possession in Narcotics Cases: to have and have not,* 58 Va. L. Rev. 751 (1972); Annot., 91 A.L.R.2d 810, § 3 (1963, Supps. 1968 and 1970). There is no absolute requirement that custody of drugs be exclusive. D. Bernheim, Defense of Narcotics Cases § 1.11 (1973); Annot., 56 A.L.R.3d 948, §§ 3, 19 (1974).

*Defendant's exceptions overruled.*

All concurred.