Merrimack
No. 90-291

### THE STATE OF NEW HAMPSHIRE

v.

### ROBERT A. REID

July 8, 1991

*John P. Arnold,* attorney general (*Karen A. Levchuk,* assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant was convicted after a jury trial in Superior Court (*Morrill,* J.) of second degree assault, RSA 631:2, and two counts of resisting arrest, RSA 642:2. On appeal, the defendant raises two issues. First, he argues that the trial court erroneously instructed the jury on the resisting arrest charges by stating that the defendant could be convicted if he "recognized or should have recognized" that the individual effecting the arrest was a law enforcement officer. Second, the defendant argues that he was denied due process of law when the trial court refused to grant a continuance after the prosecution, on the first day of trial, amended its notice of intent to seek extended term sentencing. We reverse and remand on the first issue, and we affirm on the second issue but remand for reconsideration of sentence.

The facts elicited at trial are as follows. On August 26, 1989, State Trooper Dustin was travelling southbound on Interstate Route 93 in Bow at approximately 10:00 p.m., when he was notified that a driver who appeared to be under the influence of alcohol was operating a vehicle heading north on Interstate 93 from the Hooksett toll booth.

Trooper Dustin positioned his marked State Police cruiser to wait for the vehicle to pass him.

Within a short time, a vehicle matching the given description appeared, and Trooper Dustin followed it. The vehicle's operation was erratic. The trooper activated his blue lights and alternating head lights to pull the vehicle over. When the vehicle failed to respond, the trooper activated his siren, and the vehicle stopped. At the time of the stop, Trooper Dustin was dressed in his police uniform, including his campaign hat and gun belt.

Trooper Dustin approached the vehicle and requested the driver's license and registration. The defendant was sitting in the front passenger seat. When the driver refused to comply, the trooper sought to administer field sobriety tests to him. Trooper Dustin instructed the other occupants of the vehicle, including the defendant, to remain in the car. As he was explaining the tests to the driver, however, the defendant got out of the car. When the trooper turned his attention to the defendant, the driver of the stopped car took the keys from the trooper's cruiser, leaving him without lights or his police radio.

The trooper grabbed the driver, informed him that he was under arrest, and attempted to handcuff him. The defendant then jumped on the trooper's back, and a scuffle ensued. The trooper was hit several times on the back of his head before the defendant, the driver, and the trooper fell to the pavement and rolled into the travel lane of the highway several times. The trooper told the defendant to get off him and told the driver he was under arrest.

Eventually, Trooper Dustin succeeded in handcuffing the driver and retrieving the keys to the cruiser. He informed both the defendant and the driver that they were under arrest. When the trooper attempted to return to the cruiser for another pair of handcuffs, the defendant continued to struggle and the pair again rolled out into the travel lane, then back to the guardrail and finally over the rail and down an embankment.

At the bottom of the hill, the defendant landed on top of Trooper Dustin. He struck the trooper in the face several times and bit his right thumb before the trooper was able to escape. Trooper Dustin then radioed for assistance. The defendant was finally restrained with the help of additional officers and the use of a PR-24 baton.

The defendant was charged with two counts of resisting arrest in violation of RSA 642:2. One count alleged that the defendant interfered with the arrest of the driver of the detained car, and the other

count alleged that he resisted his own arrest. The trial court instructed the jury on these charges as follows:

> "The definition of the crime of resisting arrest has three parts. The State must prove each part of the definition beyond a reasonable doubt. Thus the State must prove one, that the defendant acted knowingly and two, that the defendant interfered with a person who was trying to arrest either the defendant or someone else and three, that the *defendant recognized or should have recognized that the person trying to make the arrest was a police officer.*"

(Emphasis added.) Defense counsel objected to this instruction. The trial court overruled the objection, stating: "I would note that the statute talks about that the defendant recognized that it was an officer, uses the word recognized. I think the fair use of the word recognized includes should have recognized . . . ." The defendant was convicted on both counts of resisting arrest.

RSA 642:2 provides: "A person is guilty of a misdemeanor when he knowingly or purposely interferes with a person recognized to be a law enforcement official seeking to effect an arrest or detention of himself or another regardless of whether there is a legal basis for the arrest." On appeal, the defendant argues that the statute requires the State to prove that the defendant subjectively recognized the arresting individual as a police officer, and not merely that he *should have* been aware of the officer's identity. The State, on the other hand, argues that the statute provides for an objective standard which allows for conviction if a reasonable person would have believed that the arrest was being effected by a police officer. The State contends that as long as the defendant is found to have knowingly interfered with a person seeking to effect an arrest, it is sufficient that that person be recognized by the public as being a law enforcement officer. Used in this context, the State argues, the term means "recognizable as," and requires only that a reasonable person in the defendant's position would have recognized the person seeking to effect the arrest as a law enforcement official. For the following reasons, we disagree with the State's construction of the statute.

The provisions of RSA 642:2 must be read in conjunction with the general requirements of culpability set forth in RSA 626:2. RSA 626:2, I, requires that:

> "A person is guilty of . . . a misdemeanor only if he acts purposely, [or] knowingly, . . . as the law may require, with respect to each material element of the offense . . . . When

the law defining an offense prescribes the kind of culpability that is sufficient for its commission, without distinguishing among the material elements thereof, such culpability shall apply to all the material elements, unless a contrary purpose plainly appears."

In this case, the defendant was charged with acting "knowingly." RSA 626:2, II(b) defines the mental state "knowingly" in this way: "A person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense *when he is aware* that his conduct is of such nature or that such circumstances exist." (Emphasis added.)

■ Pursuant to these provisions, the mental state "knowingly" applies to each material element of the resisting arrest offense because the statute does not provide to the contrary. Clearly, the identity of the individual effecting an arrest, as a law enforcement official, is a material element of the crime. Applying the definition of "knowingly" to this material element requires a finding, in order to convict, that the defendant subjectively knew that the individual was a law enforcement official.

■ The State urges an examination of the legislative history of RSA 642:2. Because the statute is clear on its face and unambiguous, we will not resort to its legislative history. *See Petition of Jane Doe*, 132 N.H. 270, 276–77, 564 A.2d 433, 438 (1989) (the law is construed consistent with the plain meaning of the statutory language). We do note, however, that the prior version of the resisting arrest statute, RSA 594:5, provided for an objective test. That statute stated:

"If a person has reasonable ground to believe that he is being arrested and that the arrest is being made by a peace officer, it is his duty to submit to arrest and refrain from using force or any weapon in resisting it, regardless of whether there is a legal basis for the arrest."

The legislature adopted the current version of the statute in 1971 as part of the Criminal Code. Implicit in this change is that the legislature intended to abandon the objective standard.

■ While we hold that RSA 642:2 mandates a subjective standard, circumstantial evidence may be used to establish, through inference, the fact that the defendant knew that the individual effecting the arrest was a police officer. *See State v. Brown*, 132 N.H. 321, 326, 565 A.2d 1035, 1038 (1989) (subjective knowledge may be inferred

from surrounding facts or circumstances); *People v. Royal*, 62 Mich. App. 756, 761, 233 N.W.2d 860, 863–64 (1975) (jury may infer defendant's subjective knowledge from circumstantial evidence). A jury may determine the credibility of the defendant from evidence of the defendant's actions after the alleged crime and circumstances surrounding the act. *See State v. Amell*, 131 N.H. 309, 311, 553 A.2d 286, 288 (1988) (appropriate to infer guilt when evidence excludes other reasonable conclusions); *State v. Murray*, 129 N.H. 645, 650–51, 531 A.2d 323, 327 (1987) (inference of guilt from defendant's attempt to cover-up crime).

 Even if the jury may infer the defendant's state of mind from surrounding circumstances, the judge must instruct the jury that, in order to convict, it has to find that the defendant actually knew the individual resisted was a law enforcement officer. Because the jury in this case was instructed that it could convict the defendant if he *should have known* the individual effecting the arrest was a law enforcement official, the jury may have convicted the defendant on this lesser standard. We reject the State's argument that any error which may have occurred was harmless. Accordingly, we reverse the defendant's resisting arrest convictions and remand. *See State v. Williams*, 133 N.H. 631, 634, 581 A.2d 78, 80–81 (1990).

The second issue raised by the defendant on appeal is whether it is "fundamentally unfair" for the prosecution to give notice on the first day of trial of its intent to seek an extended term of imprisonment pursuant to RSA 651:6, II. Ten days prior to trial, the prosecution gave notice to the defendant of its intent to seek an extended term on one of the four charges if the defendant was convicted. On the first day of jury selection, the prosecution extended the application of that notice to the other three charges. The defendant objected to the latter notice and moved to either strike that notice or continue the trial. These motions were denied, and the defendant contends that the trial court's refusal to grant a continuance denied his right to due process of law under part I, article 15 of the New Hampshire Constitution and the fourteenth amendment to the United States Constitution. We disagree.

RSA 651:6, II grants a sentencing court the authority to impose an extended term of imprisonment when two conditions have been met. First, the substantive criteria set forth in paragraph I must be satisfied. In this case, the State relied on subparagraph (c) of paragraph I, which provides that the defendant have twice previously been imprisoned on sentences in excess of one year. Second, paragraph II requires that the State give notice of its intent to recommend the

application of the statute. Paragraph II reads, "notice of the possible application of this section [must be] given the defendant prior to the commencement of trial. . . ." RSA 651:6, II.

The defendant concedes that the prosecution can file an amended notice on the first day of trial, but he argues that he relied upon the prosecution's original notice and formed his trial strategy on that basis. The defendant contends that, under the circumstances present in this case, he was entitled to a continuance to reformulate his defense because the subsequent notice "radically change[d] the viability . . . of a defense which was predicated upon the original notice."

The notice requirement of RSA 651:6 provides the defendant "an opportunity to offer evidence to refute the findings required by subsection [sic] one of the statute." *State v. Toto*, 123 N.H. 619, 625, 465 A.2d 894, 898 (1983). In *State v. Coppola*, 130 N.H. 148, 536 A.2d 1236 (1987), *remanded for new trial on other grounds*, 878 F.2d 1562 (1st Cir.), cert. denied, 110 S. Ct. 418 (1989), this court explained that,

> "if . . . a defendant would have offered evidence at trial with a bearing on the basis later claimed for requesting an extended prison term, and if for some reason the defendant would have a substantially diminished opportunity to present such evidence at the hearing on his sentence, his prejudice should preclude the imposition of any extended term."

*Id.* at 155, 536 A.2d at 1240.

In this case, the amended notice complied with the requirements of the statute. Notice was given prior to the commencement of trial of the possible application of the statute to charges against the defendant. No new grounds for application of the extended term statute were set forth in the amended notice. While the amended notice may have been applicable to new charges, the basis on which it was sought remained the same. The defendant was not denied the opportunity to provide evidence refuting the basis for seeking the extended term and, therefore, was not thereby prejudiced. The trial court did not abuse its discretion in denying the defendant's motion to continue. To the extent, if any, that the trial court may have taken into account the two convictions for resisting arrest, which are hereby reversed, in imposing the extended prison term for the second degree assault conviction, we remand for reconsideration of the sentence imposed.

*Reversed in part; affirmed in part; remanded.*

All concurred.